**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

---

No. 91-3916

---

JAY H. RILEY,,

                              Plaintiff-Appellant,


versus

ERNEST WOOTEN, Individually and in his
capacity as Sheriff of Plaquemines Parish, Et Al.,

                              Defendants,

ERNEST WOOTEN, Etc., and
PLAQUEMINES PARISH COUNCIL,

                              Defendants-Appellees.

---

Appeals from the United States District Court
for the Eastern District of Louisiana

---

(August 18, 1993)

Before REYNALDO G. GARZA, HIGGINBOTHAM, and DeMOSS, Circuit Judges.

DeMoss, Circuit Judge:

## I.   FACTS AND PROCEDURAL HISTORY

On June 18, 1989, Plaquemines Parish Sheriff's deputies and a representative of the Louisiana Office of Alcohol and Beverage Control entered Jay Riley's business, the J.U. Lounge, and removed his state and parish alcohol permits and other permits and licenses necessary for him to operate, which effectively closed down his business.  In his federal suit, Riley alleges that such actions were unlawful because the Council and sheriff closed his business and suspended his licenses without prior notice or an opportunity for a hearing violating his right to procedural due process.

1

Because of those allegedly unlawful actions, Riley claims that the Council and Sheriff damaged his business.

On August 24, 1989, Riley filed a petition for damages, writ of mandamus, and temporary restraining order in Louisiana state court against Ernest Wooten, in his capacity as Sheriff of Plaquemines Parish; Luke Petrovich, in his capacity as President of Plaquemines Parish; Larry Dickenson, in his capacity as Commissioner of the Office of Alcohol and Beverage Control; and the State of Louisiana.

The next week, Luke Petrovich filed a petition for revocation and/or suspension of Riley's liquor permit and occupational license with the Plaquemines Parish Council (the Council) alleging that Riley served alcohol to intoxicated persons, operated a disorderly house, violated Plaquemines Parish building codes, and that representatives of Riley possessed and sold drugs on the premises. At a public hearing on September 28, 1989, the Council adopted Resolution Numbers 89-334 and 89-335, which revoked Riley's Plaquemines Parish occupational license and liquor permit. Meanwhile, in the state court suit the defendants filed an exception of prematurity, which the court granted on September 1, 1989. Riley appealed the trial court's ruling. On appeal, because the Council had conducted a hearing and revoked Riley's permit and license, the Louisiana appellate court sustained the dismissal of Riley's case as moot as far as he was seeking the return of his license and permit.

On October 16, 1989, Riley filed a motion and order for devolutive appeal in Louisiana state court challenging the decision of the Council to revoke his permits. The Louisiana trial court

2

dismissed the suit since Riley had not timely brought it under Louisiana law, which required an aggrieved party to appeal the suspension of their permits within 10 days of being notified of the suspension. *See* La. R.S. 33:4788.

Not to be deterred, Riley again sued Sheriff Wooten, Petrovich, and the Council in the United States District Court for the Eastern District of Louisiana (USDC) asserting that they violated his right to procedural due process.[1] Petrovich filed a motion for summary judgment based on absolute immunity, which was unopposed, and the USDC granted the motion. The Council then filed a motion to dismiss on the ground of res judicata, and on October 8, 1991, the USDC granted the motion. Riley appealed the October 8 dismissal on October 25. Thereafter, on December 2, the USDC dismissed Sheriff Wooten on the ground of res judicata. Riley appealed the December 2 dismissal on January 6.

## II. DISCUSSION

### 1. Appellate Jurisdiction

The Council contends when Riley appealed the order dismissing his claim against it, this Court did not have jurisdiction because the order was interlocutory and there was no Rule 54(b)[2] certification. That is so, because when the USDC dismissed the Council, it had not adjudicated Riley's claim against Sheriff Wooten and; therefore, there was not a final judgment. After the

---

[1] We have subject matter jurisdiction of this appeal pursuant to 28 U.S.C. § 1331, which states "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

[2] Fed. R. Civ. P. 54(b) states "[w]hen more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment."

3

USDC dismissed Sheriff Wooten, Riley appealed the order as to Sheriff Wooten, but did not appeal the order relating to the Council. Therefore, according to the Council, this Court has no appellate jurisdiction over it.

In a multi-party suit, a court's order is final only if it meets one of two conditions: (1) it must adjudicate all the claims of all the parties, or (2) the court must expressly determine there is no just reason for delay and direct an entry of judgment under Rule 54(b). Jetco Electronic Industries, Inc., v. Gardiner, 473 F.2d 1228, 1231 (5th Cir. 1973).

To support its contention that we do not have appellate jurisdiction over it, the Council directs us to the cases of Kirtland v. J. Ray McDermott & Co., 568 F.2d 1166 (5th Cir. 1978) and United States v. Taylor, 632 F.2d 530 (5th Cir. 1980). In Kirtland, the plaintiff sued his employer, McDermott, under the Jones Act and general maritime law. Kirtland, at 1168. Later he sued an additional defendant, Columbia Gulf Transmission Company. Id. The trial court then granted a summary judgment to Columbia and the plaintiff appealed. Id. One day after the appeal was docketed, the trial court entered a Rule 54(b) order stating there was no just reason for delaying an entry of final judgment. Id. On appeal, this court dismissed the appeal holding that when "more than one claim for relief is presented in an action, an express determination pursuant to Rule 54(b) is required as a prerequisite to an appeal from an order disposing of fewer than all the claims." Id.

In Taylor, the defendant appealed the trial court's denial of his motion to join and the dismissal of his counter-claim. Taylor,

4

at 530.  After the defendants appealed, the plaintiff dismissed the case, which ended the litigation.  Id. at 531.  On appeal, this court refused to exercise its jurisdiction holding that the defendant's failure to appeal from the final judgment making the joinder denial and the counter-claim dismissal a final and appealable decision deprived the court of jurisdiction.  Id.  The court also held the final judgment did not retroactively validate the premature notice of appeal.  Id.

To refute the Council's contention, Riley relies on the Rule first announced in Jetco Electric Industries, Inc., v. Gardiner, 473 F.2d 1228 (5th Cir. 1973).  In Jetco, the plaintiffs prematurely appealed an order dismissing only one of three defendants.  Id. at 1231.  Several months later, the trial court entered an agreed judgment disposing of the claims against the two remaining defendants.  Id.  On appeal, while recognizing that the appeal met neither the requirements of Rule 54(b) nor a final judgment, this court nevertheless concluded that it had jurisdiction to consider the premature appeal.  Id. at 1231.  The court stated the "two orders, considered together, terminated this litigation just as effectively as would have been the case had the district judge gone through the motions of entering a single order formally reciting the substance of the earlier two orders."  Id.; *See also* Alcorn County, Miss. v. U.S. Interstate Supplies Inc., 731 F.2d 1160, 1166 (5th Cir. 1984) (interpreting Jetco) ("[W]e may consider a premature appeal in those cases where judgment becomes final prior to disposition of the appeal.").

This court has followed the Jetco rule in many decisions. *See*, Levron v. Gulf Intern. Marine, Inc., 854 F.2d 777, 779-80 (5th

5

Cir. 1988); Crowley Maritime Corp., v. Panama Canal Comm., 849 F.2d 951, 953 (5th Cir. 1988); Alcom Electric Exchange, Inc., v. Burgess, 849 F.2d 964, 966-69 (5th Cir. 1988) (expressly rejecting Taylor); Sandidge v. Salen Offshore Drilling Co., 764 F.2d 252, 255 (5th Cir. 1985); Tower v. Moss, 625 F.2d 1161, 1164-65 (5th Cir. 1980).  More recently, this court reaffirmed the efficacy of the Jetco Rule in Simmons v. Willcox, 911 F.2d 1077, 1080 (5th Cir. 1990).  In Simmons, the trial court granted summary judgment to four of six defendants, thus leaving two defendants remaining in the case.  Id. at 1080.  Without seeking a Rule 54(b) certification, the plaintiff appealed.  Id.  After that, the trial court dismissed the remaining two defendants and the plaintiff filed a second appeal.  This court held that it had appellate jurisdiction over all of the defendants in that the defect in the initial appeal was cured by the later dismissal of the remaining defendants, which ended the litigation before the disposition of the appeal.  Id.

In our view, the Jetco Rule controls the present case and we should exercise jurisdiction over this appeal.  Similar to Jetco and Simmons, here, the defect in Riley's original appeal was cured by the trial court's subsequent dismissal of Sheriff Wooten from the case before we disposed of the appeal.  The cases relied upon by the Council, Kirtland and Taylor, are distinguishable.  In Kirtland, the original premature notice of appeal was not cured by a later dismissal of the remaining defendant before the court disposed of the appeal, and in Taylor the litigation was ended by the plaintiff's voluntary dismissal of the case.  To the extent the opinions in Kirtland and Taylor conflict with the opinion in Jetco,

6

we hold that <u>Jetco</u> controls as this Circuit has applied it more prevalently and for a longer period.

2. <u>Res Judicata</u>

We must first decide whether the state or federal rules of claim preclusion apply. In <u>University of Tennessee v. Elliott</u>, 478 U.S. 788, 799 (1986), the Supreme Court held that federal courts apply state rules of issue preclusion after a state administrative adjudication. Since this case involves the preclusive effect to give the Council's administrative adjudication, Louisiana's res judicata law governs this appeal.

Both parties agree that under Louisiana law once the time to appeal an administrative ruling has run, the ruling becomes final and has res judicata effect. *See*, <u>Robinson v. City of Baton Rouge</u>, 566 So. 2d 415 (La. App. 1st Cir. 1990); La. R.S. 33:4788.[3] What the parties disagree on is the scope of the preclusive effect to be given to Riley's failure to appeal timely the Council's ruling. Louisiana Revised Statute Annotated 13:4231 determines the scope of the preclusive effect of a prior suit. For a former judgment to bar a subsequent suit on the ground of res judicata, the statute required that:

> [t]he thing demanded must be the same; the demand must be founded on the same cause of action; the demand must be

---

[3] La. R.S. 33:4788 states:

> [t]he holder of the permit who is aggrieved by a decision of the governing body of the municipallity or parish or a municipal alcoholic beverage control board to suspend or revoke his permit, may within ten days of the notification of the decision take a devolutive appeal to the district court having jurisdiction of his place of business and on such appeal the trial shall be do novo . . . .

La. R.S. 33:4788.

between the same parties, and formed by them against each other in the same quality.[4]

La. R.S. 13:4231.

Riley contends that the state suit challenging the Council's ruling does not preclude him on the ground of res judicata from bringing the present suit, because neither the state suit nor the Council hearing addressed the same relief or the same cause of action, the propriety of and damages flowing from the initial closing of his business on June 18, which he now pursues in the present suit. To support his contention that the present action is not barred by res judicata, Riley relies on the Fifth Circuit case of Frazier v. King, 873 F.2d 820, 824 (5th Cir.), *cert. denied*, 493 U.S. 977 (1989).[5]

In Frazier,[6] the plaintiff, after obtaining a favorable ruling in a Louisiana Civil Service Commission (LCSC) hearing, sued in federal court for damages alleging that her employer violated her constitutional rights under the First and Fourteenth amendments and committed several state law torts. In response, the defendants answered, and the trial court agreed, that the LCSC adjudication

---

[4] Sheriff Wooten points out the Louisiana Legislature has recently amended La. R.S. 13:4231, so that it now adopts the broader common law theory of res judicata which is based on a transactional or occurrence test. The comments to the recent amendments to the legislation succinctly state "R.S. 13:4231 makes a substantial change in the law. Under the present law a second action would be barred by the defense of res judicata only when the plaintiff seeks the same relief based on the same cause or grounds. This interpretation of res judicata is too narrow to fully implement the purpose of res judicata which is to foster judicial efficiency and also to protect the defendant from multiple lawsuits. . . ." Under the new La. R.S. 13:4231, Wooten contends Riley's federal suit would be barred. What Wooten omits is that the comments to the Act specifically state that "the preclusive effect and authority of a judgment rendered in an action filed before the effective date of this Act, shall be determined by the law in effect prior to January 1, 1991."

[5] *See also* Cantrelle Fence & Supply Co., Inc. v. Allstate Ins. Co., 515 So.2d 1074 (La. 1987), which recognizes that the common law rule allowing preclusive effect to be given to all matters that might have been pled or raised is inapplicable in Louisiana.

[6] In Frazier, the court did not decide whether state or federal rules of claim preclusion apply after a state agency, rather than a state administrative, adjudication. Under either the federal or state rule of claim preclusion, the court held that the plaintiff's federal claims were not barred.

barred the federal claims on the ground of res judicata. On appeal, this Court reversed, holding that the "thing" demanded by the plaintiff in the agency hearing, reinstatement with back pay, differed from the relief she sought in federal court, money damages and attorney's fees, and; indeed, could not have been granted in the agency hearing. In the present case, Riley argues the administrative hearing conducted by the Council did not decide the propriety of or the damages resulting from the initial closing of his business, and, therefore, did not adjudicate his rights regarding the initial June 18 closing. Riley contends, just as in Frazier, neither the "thing" demanded by him nor the present cause of action was adjudicated by the Council or the state court, and consequently Louisiana's law of res judicata does not bar the present suit.

The Council contends that Riley's argument that its administrative hearing did not have as its focus the initial closing of his business, and, therefore, did not adjudicate his procedural due process rights regarding the initial closing misses the point. According to the Council, whether its administrative hearing addressed the initial closing of his business is not essential to the core of its res judicata argument. Rather, the Council contends that its administrative ruling revoking Riley's permits is final and acts as res judicata on the issue of the revocation of the permits in that Riley failed to appeal timely its ruling. Therefore, the Council contends the issue of the revocation of the permits is final, and consequently any claim for damages by Riley resulting from the revocation of those permits is barred, even his claim for damages resulting from the initial

9

closing of his business.  If Louisiana did not take such a narrow view of res judicata, the Council's argument might carry the day.

The Council contends that <u>Myers v. City of Lafayette</u>, 537 So. 2d 1269, 1275 (La. App. 3rd Cir. 1989) supports its argument that because Riley failed to appeal the administrative ruling, he has no claim for damages resulting from the closing of his business in any regard.  In <u>Myers</u>, the court held that the plaintiff's failure to appeal timely the Louisiana Office of Alcoholic Beverage Control's denial of her alcohol beverage permits to the court as the statute required, made the decision of the state and the city not to issue the permits final and binding on all of the parties.  Further, the court stated "[s]ince plaintiff had no legal right to compel the issuance of permits or to even now challenge the non-issuance of the permits she has no cause of action for damages resulting from the non-issuance of the permits."  <u>Id</u>. at 1275.  In sum, the Council contends Riley's failure to appeal timely its administrative ruling revoking his permits bars him from now bringing a procedural due process claim for the initial closing of his business.

The Council's argument relying on <u>Myers</u> is unpersuasive, however, because <u>Myers</u> involved neither the revocation of an issued permit nor the closing of an ongoing business, but the denial of an application for a permit.  In <u>Myers</u>, therefore the issue of the propriety of the closing of the plaintiff's business, initial or otherwise, was not before the court.  Consequently, we conclude that the holding in <u>Myers</u> does not foreclose Riley from bringing his procedural due process claim in the present case.  Moreover, our conclusion is buttressed by the Louisiana Supreme Court case of

10

<u>Paillot v. Wooton</u>, 559 So.2d 758 (La. 1990), in which the court struck down the Council ordinances[7] in issue on this appeal.

In <u>Paillot</u>, the plaintiff, Paillot, sued seeking damages and an order enjoining the Council from suspending her permits on the ground of due process, after the sheriff and the Council shut down her bar without prior notice or a hearing. The Louisiana trial court issued a preliminary injunction ordering the Council to return all of Paillot's permits, pending a hearing. After the court issued the injunction, the Council conducted a hearing and suspended Paillot's permits. On appeal, the Louisiana Supreme Court held the Plaquemine's ordinances allowing the revocation of Paillot's permits and the closing of her business without prior notice and a hearing violated her right to procedural due process. In so holding, the court rejected the Council's argument that the administrative hearing after the initial closing cured the illegality of the initial closing. In rejecting that argument, the court stated:

> [b]ecause in this case the license and permits were again suspended when a hearing was finally held by the council almost a month after the initial government action, there is reason to believe plaintiff may have committed violations which justified suspension of the permits. However `to one who protests against the taking of his

---

[7] Plaquemines Parish Ordinance 4-14 provided:

[i]f any disturbance of the peace, public nuisance or other violation of state law or this chapter is committed on said premises [businesses licensed to sell alcoholic beverages], the president of the council with the approval of the commissioner of finance or the sheriff, is hereby authorized to suspend or revoke said permit [to sell liquor or beer] . . . In case of such suspension or revocation, permittee may appeal to the council for a hearing, to remove or recall the suspension or revocation, pending which hearing no liquor or beer shall be sold by permittee . . . .

Plaquemines Parish Ordinance 14-26 provided:

if any violation of Louisiana law or parish ordinance is committed on said [licensed] premise, the council, through its president, with recommendations from the director of administration or the sheriff, may suspend or revoke the occupational license to continue to conduct such business . . . .

11

> property without due process of law, it is no answer to say that in his particular case due process of law would have led to the same result because he had no adequate defense on the merits.'

Id. at 762 (quoting Wilson v. City of New Orleans, 479 So.2d 891, 894 (La. 1985)).

We are obligated to follow the Louisiana courts' interpretation of its law regarding res judicata. In our view, the Louisiana Supreme Court would not bar Riley from suing the Council or Sheriff Wooten on the ground of res judicata for the initial closing of his business although the Council held a later administrative hearing, which Riley lost.

In sum, the Council hearing did not address the propriety of the initial closing of Riley's business or whether Riley suffered any damages because of the closing. That fact, coupled with Louisiana's narrow view of res judicata supports our holding that the USDC erred in granting summary judgment to the Council and Sheriff Wooten.

## III. CONCLUSION

For the foregoing reasons, the judgment of the district court is REVERSED and the case is REMANDED.